UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - -- - - X
OLGA AYZELMAN, et al.,

                 Plaintiffs,

        - against -

STATEWIDE CREDIT SERVICES CORP.,
et al.,

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM
AND ORDER**

04 CV 3732 (CLP)

       Plaintiffs Olga Ayzelman and Anderson Bastien bring this class action, on behalf of themselves and others similarly situated, against defendants Statewide Credit Services Corporation ("Statewide"), and Michelle Schwartz and Gary Schwartz, individually and d/b/a/ Schwartz, Schwartz & Associates[1] (collectively, the "Schwartz defendants"), pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). Specifically, plaintiffs allege that certain language in debt collection letters, purportedly sent to plaintiffs and to other individual consumers by Statewide and the Schwartz defendants, violates the FDCPA. Presently before this Court are: 1) a joint motion to certify the proposed class; and 2) a joint motion for preliminary approval of a class action Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

---

       [1]According to plaintiffs' November 20, 2006 letter, "Schwartz, Schwartz & Associates is a registered d/b/a of Statewide Credit Services Corp." (Pls.' Letter dated Nov. 20, 2006 at 1). Thus, "[b]ecause there are really only three defendants, Statewide Credit Services Corp., and Michelle and Gary Schwartz, the settlement [discussed within] covers only those three defendants." (Id. at 2).

On August 29, 2003, plaintiff Olga Ayzelman, a resident of Brooklyn, New York,

received a letter from Statewide, the purpose of which was to collect an alleged debt of $2,953.65

owed to Parkway MRI, P.C. (Compl. ¶ 14; Ex. A). In the Complaint, plaintiff Ayzelman alleges

that the collection letter sent by Statewide violated the FDCPA because it failed to contain an

adequate validation notice as required by Section 1692g, which is intended to advise the

consumer as to the right to dispute the debt, to request verification of the debt, or obtain certain

information from the creditor. (Id. ¶¶ 29, 31). In addition, plaintiff Ayzelman claims that

language in the letter demanding that payment be mailed "overshadows" the language describing

the 30-day validation period because in the same paragraph in which it details the validation

period it also demands that the check be mailed. (Id. ¶ 32).

Plaintiff Ayzelman further alleges that by letter dated October 20, 2003, the Schwartz

defendants attempted to collect $3,130.67 on behalf of Parkway MRI, P.C. (Id. ¶ 17; Ex. B).

Plaintiff asserts not only that this letter failed to contain the validation notice required by Section

1692g, but also that it violated Sections 1692e, e(5), and e(10) by falsely representing that there

would be immediate court action taken to collect the debt, that there would be a "'judgment,'" an

increase in indebtedness, costs, fees, interest, and "'Marshal fees.'" (Id. ¶¶ 42-47). Plaintiff

Ayzelman further alleges that the Schwartz defendants' letter was designed to mislead the "'least

sophisticated consumer'" into believing that Schwartz, Schwartz & Associates was a law firm,

when in fact they were working on behalf of Statewide. (Id. ¶¶ 48, 49).

---

[2]The factual background is drawn from plaintiffs' Class Action Complaint ("Complaint"), and the parties' submissions. However, as noted in the proposed Settlement Agreement, while the parties have reached a settlement of the action, subject to the Court's approval, the defendants deny any liability to plaintiffs or to any member of the proposed class.

Plaintiff Ayzelman also asserts that the Schwartz defendants sent her an additional debt collection letter, dated June 17, 2004 (id. ¶ 22; Ex. E), which also allegedly violated Sections 1692e, e(5), and e(10). (Id. ¶ 55). Specifically, Ayzelman alleges that the Schwartz defendants improperly represented that they had the "ability to recommend and enforce" various collection-related measures, including the initiation of a lawsuit, the attachment of assets, and the issuance of Internal Revenue Service penalties. (Id.)

Plaintiff Anderson Bastien alleges that he received collection letters containing language similar to that in the first two letters received by Ms. Ayzelman. (Id. ¶¶ 19, 21; Ex. C, D). Specifically, he received a letter from Statewide, dated September 25, 2003, attempting to collect $3,204.60 on behalf of Parkway MRI, P.C. (id. ¶ 19; Ex. C), which contained language that was virtually identical to the language in the August 29, 2003 letter that Ms. Ayzelman received from Statewide. (Compare Compl., Ex. A with Ex. C). Similarly, the November 20, 2003 letter that Bastien received from the Schwartz defendants, seeking collection of $3,254.06, contained the same language as the letter that Ms. Ayzelman received dated October 20, 2003. (Compare Compl., Ex. B with Ex. D). Plaintiff Bastien alleges that both of the letters that he received violate various provisions of the FDCPA as discussed in conjunction with the first two letters received by Ms. Ayzelman. (Id. ¶¶ 29, 31, 32, 42-49).

Plaintiffs now seek to assert claims against the defendants under the FDCPA on behalf of themselves and a proposed class consisting of all consumers within the State of New York who were sent collection letters by defendant Statewide[3] during the period of August 27, 2003 through

---

[3]While the Complaint details other allegedly unlawful collection letters issued by the defendants, the parties limited the class to those consumers who received collection letters bearing Statewide's letterhead, as "[t]hese were the collection letters sent with the most frequency by defendants and thus, will ensure that the greatest number of consumers have the

August 27, 2004, in a form materially identical, or substantially similar, to the letters received by plaintiffs Ayzelman and Bastien, and which were not returned by the Postal Service as undelivered. (Mem. at 3).[4] According to defendants' records, it appears that there were 1,253 collection letters sent during the proposed class period that were materially identical, or substantially similar, to the letters received by plaintiffs. (Defs.' Letter dated June 27, 2005 at 1).

## DISCUSSION

### A. The Fair Debt Collection Practices Act

The FDCPA regulates the collection of consumer debts, defined in the Act as debts incurred "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). Section 1692g of the FDCPA sets forth certain elements that any debt collection notice sent to a consumer must contain. These include:

      (1)  the amount of the debt;

      (2)  the name of the creditor to whom the debt is owed;

      (3)  a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

      (4)  a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

---

opportunity to participate in the settlement." (Pls.' Letter dated Nov. 20, 2006 at 2).

[4]Citations to "Mem." refer to the parties' Memorandum submitted in support of their Joint Motion for Preliminary Approval of the Class Action Settlement, dated August 29, 2006.

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)-(5).

A notice containing this information must be sent to the consumer within five days of the initial communication, unless the information is included in the initial communication. 15 U.S.C. § 1692g(a). If the consumer disputes the debt, or requests the name and address of the original creditor, and notifies the debt collector in writing within the thirty-day period, the statute provides that "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Failure to include the requisite information in the validation notice has been held to constitute a violation of the FDCPA. See, e.g., Vera v. Trans-Cont'l Credit & Collection Corp., No. 98 CV 1866, 1999 WL 163162, at *2 (S.D.N.Y. Mar. 24, 1999) (holding that the debt collection notice at issue violated Section 1692g(a)(3) because it did not unequivocally state that the consumer had thirty days from the date on which the notice was received to dispute the debt) (emphasis in original).

The statute also prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any [consumer] debt." 15 U.S.C. § 1692e. See Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2d Cir. 1993) (setting forth the prohibition and exploring the standard for evaluation deceptiveness). Subsection e of the Act contains a non-exhaustive list of prohibited activities which constitute false, misleading, or deceptive practices,

including Subsection e(5), which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and Subsection e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(5), (10). "Deceptiveness," within the meaning of Section 1692e, includes ambiguity. Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996).

In determining whether language that can be construed as threatening legal action violates Section 1692e(5), courts look to the facts and circumstances of the case and consider a number of factors. See, e.g., Madonna v. Academy Collection Servs., Inc., No. 95 CV 875, 1997 WL 530101, at *6-9 (D. Conn. Aug. 12, 1997) (holding that no violation occurred where language in the debt collection letter merely referred to remedies available to the creditor and did "not suggest that legal action will be taken") (emphasis in original); Knowles v. Credit Bureau of Rochester, No. 91 CV 14, 1992 WL 131107, at *1-3 (W.D.N.Y. May 28, 1992) (finding compelling the fact that the language merely suggested that the debt collector's client, and not the debt collector himself, may consider pursuing legal action in the event of non-payment). Where the debt collector is not authorized by its client to pursue legal action, threats of legal action have been found to be in violation of Section 1692(e)(5). See, e.g., Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62-63 (2d Cir. 1993). In Bentley, where no such authorization had been given to the collection agency, a statement in a collection letter referring to legal remedies available to enforce a judgment was found to violate the FDCPA's prohibition on threatening action "'not intended to be taken.'" Id. at 63. Letters that falsely imply that legal action has been authorized and which lead the "'least sophisticated consumer'" to conclude that legal action is "likely and

imminent" are considered to be "'false, deceptive, [and] misleading'" in violation of the FDCPA. See id. at 62.

Furthermore, the Second Circuit has held that Section 1692e is violated when a creditor creates the misleading impression that an attorney has been retained to collect the consumer's debt when, in fact, the attorney is not so involved. See Clomon v. Jackson, 988 F.2d at 1321. Finally, where the letter or notice contains language beyond that which is statutorily required by the notice requirements detailed in 15 U.S.C. § 1692g, the letter may run afoul of Section 1692e if there is more than one reasonable interpretation to the language. See Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998) (noting that "'[w]hen a notice contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the Act'") (internal citation omitted); see also Russell v. Equifax A.R.S., 74 F.3d at 34 (holding that if the "least sophisticated consumer reads [a communication with conflicting statements on its front and back] she could readily believe – despite the inclusion of the validation notice – that were she to take any course other than payment to [the debt collection agency] within 10 days, it would permanently affect her credit record [as written on the front of the collection notice]"). A collection notice is deceptive for the purposes of the FDCPA if it is "reasonably susceptible to an inaccurate reading." Russell v. Equifax A.R.S., 74 F.3d at 35; see also Clomon v. Jackson, 988 F.2d at 1319.

In assessing the language of debt collection letters to determine if they violate the FDCPA, courts in the Second Circuit apply an objective standard derived from the perspective of the "least sophisticated consumer." McStay v. I.C. Sys., Inc., 308 F.3d 188, 190 (2d Cir. 2002); see also Russell v. Equifax A.R.S., 74 F.3d at 34; Clomon v. Jackson, 988 F.2d at 1318-19;

7

Lerner v. Forster, 240 F. Supp. 2d 233, 237 (E.D.N.Y. 2003). A person without the "astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer" should be able to understand the language of the notice he or she receives. Russell v. Equifax A.R.S., 74 F.3d at 34.

Although the least sophisticated consumer standard is intended to protect "the naive and the credulous" from abuse, courts applying the standard have "carefully preserved the concept of reasonableness." Clomon v. Jackson, 988 F.2d at 1319. "[E]ven the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Id.; see also McStay v. I.C. Sys., Inc., 308 F.3d at 191 (noting that "when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back").

Under the FDCPA, an individual who can establish a violation of the Act may recover statutory damages in an amount not to exceed $1,000.00, plus any actual damages sustained. See 15 U.S.C. §§ 1692k(a)(1), (a)(2)(A). Pursuant to 15 U.S.C. § 1692k(a)(2)(B), recovery in FDCPA class actions is limited to actual damages plus statutory damages in an amount not to exceed $1,000.00 for each named plaintiff, and to the lesser of $500,000.00 or one percent of the net worth of the defendant debt collector for the remainder of the class. See 15 U.S.C. §§ 1692k(a)(1), (a)(2)(B).

8

B.  Rule 23 Motions

   1.  The Requirements of Rule 23(a)

   Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." Collier v. Montgomery County Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000). Rule 23(a) of the Federal Rules of Civil Procedure governs class certification and provides that:

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

   In addition to satisfying these prerequisites, a plaintiff must also satisfy one of the three subdivisions of Rule 23(b):  (1) that separate actions pose a risk of inconsistent adjudications or would substantially impair the ability of other individuals to protect their interests; (2) injunctive or declaratory relief is sought concerning the class as a whole; or (3) common questions predominate over individual questions and a class action is superior to other methods for bringing suit. Fed. R. Civ. P. 23(b). See generally Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997). It is plaintiffs' burden to establish compliance with the requirements of Rule 23, but in analyzing the issue of certification, the Court accepts as true the allegations in the complaint regarding the merits of the claim. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974); Labbate-D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996).

a. Numerosity

In this case, there appears to be no dispute that the numerosity requirement of Rule 23(a) has been met. Although there appear to be only 1,253 potential class members, factors such as the inconvenience of trying individual actions, as well as the financial resources of potential class members, weigh in favor of a class action in this case. See Savino v. Computer Credit, Inc., 173 F.R.D. 346, 351 (E.D.N.Y. 1997), aff'd, 164 F.3d 81 (2d Cir. 1998). Indeed, the Second Circuit has noted that "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert denied, 515 U.S. 1122 (1995).


b. Common Questions of Fact of Law

In determining whether the plaintiffs can show that the claims of class members share common questions of law or fact, the Rule does not require that "'all questions of law or fact raised be common.'" Savino v. Computer Credit, Inc., 173 F.R.D. at 352 (quoting Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 18 (W.D.N.Y. 1995)). In other words, there "need only be a single issue common to all members of the class," as the "critical inquiry is whether the common questions lay at the 'core' of the cause of action alleged." Id. (internal citations omitted). Where FDCPA plaintiffs have received similar debt collection letters from the same defendants, courts have certified the class, finding sufficient commonality. Id. (gathering cases); see also Labbate-D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456.

Here, where the central legal question in the case is whether Statewide sent substantially similar collection letters that contained language in violation of the FDCPA, there are common issues sufficient to satisfy the requirements of Rule 23(a)(2).

## c. Typicality

Rule 23(a)(3) requires that the plaintiffs' claims be typical of the claims of the class.
Typicality has been found "when each class member's claim arises from the same course of
events and each class member makes similar legal arguments to prove the defendant's liability."
Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).

Here, the claims of plaintiffs Ayzelman and Bastien satisfy the requirements of the Rule
in that each class member was allegedly harassed or abused by debt collection letters that are
substantially similar in nature to the ones received by plaintiffs, and that irrespective of any
minor variations in the language of the letters, the claims are sufficiently typical to warrant
certification.

## d. Adequacy of Representation

In order to satisfy Rule 23(a)(4), there must be a showing that class counsel is "'qualified,
experienced and generally able' to conduct the litigation," Halford v. Goodyear Tire & Rubber
Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968)),
and that the class members' interests are not "'antagonistic'" to one another. Id.; see also County
of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907
F.2d 1295 (2d Cir. 1990).

Here, plaintiffs' counsel, Brian L. Bromberg, Esq., has ample experience to serve as
counsel to a class certified under the FDCPA. (See Bromberg Decl. ¶ 11).[5]  Counsel, who will be
a lecturer at this month's National Consumer Law Center's Annual Litigation Conference (id. ¶

---

[5]Citations to "Bromberg Decl." refer to the Declaration of Brian L. Bromberg, dated
November 1, 2006.

16), is a member of the bars of New York and California, and is admitted to practice in a multitude of federal courts, including this Court, the Southern District of New York, the Second Circuit Court of Appeals, and the United States Supreme Court. (Id. ¶¶ 2, 4). Thus, this Court finds that counsel will adequately represent the class. After reviewing the Certifications submitted by Mr. Bromberg's co-counsels, Lance A. Raphael, Esq., and Stacy M. Bardo, Esq., the Court similarly finds those individuals capable of adequate class representation. (See Raphael Cert. ¶¶ 1, 2, 4, 9, 10; Bardo Cert. ¶¶ 1, 2, 6, 9, 10).[6] Similarly, there does not appear to be any antagonism between plaintiffs' claims and those of the proposed class that would hinder plaintiffs' abilities to act as class representatives.

### 2. The Requirement of Rule 23(b)

Having satisfied the requirements of Rule 23(a), the class must also satisfy one of the conditions contained in Rule 23(b). Here, the Court finds that the use of standardized form letters to collect these debts, and the common practices of the defendants in mailing these letters to class members, predominate over any individual questions, and that a class action is the superior method for the "fair and efficient adjudication" of the claims. See Fed. R. Civ. P. 23(b)(3); Labbate-D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 458.

Accordingly, this Court finds that plaintiffs have satisfied the third prong of Rule 23(b), and pursuant to that section hereby certifies a class consisting of all consumers in the State of New York who, during the period between August 27, 2003 and August 27, 2004, received debt

---

[6]Citations to "Raphael Cert." refer to the Certification of Plaintiffs' Attorney Lance A. Raphael, dated November 1, 2006. Citations to "Bardo Cert." refer to the Certification of Plaintiffs' Attorney Stacy M. Bardo, dated November 1, 2006.

collection letters bearing defendant Statewide's letterhead[7] in a form identical, or substantially similar, to the letters received by plaintiffs.

## C. Preliminary Approval of the Class Settlement

### 1. Standards

Having reached a tentative settlement of this class action, the parties now seek preliminary approval of the proposed settlement pursuant to Federal Rule of Civil Procedure 23(e). To grant such approval, the Court must determine that the proposed settlement is "fair, adequate, and reasonable." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000).

The Second Circuit has enumerated nine factors to guide courts in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999). The court must also determine if the settlement was "achieved through arms-length negotiations by counsel with the experience and

---

[7]This includes those individuals to whom Statewide sent debt collection letters, so long as the letters were not returned by the Postal Service as undelivered.

ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F.

Supp. 2d at 178; see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district

court must "determine[ ] a settlement's fairness by examining the negotiating process leading up

to the settlement as well as the settlement's substantive terms"). In reviewing a proposed

settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a

product of collusion, and that the class members' interests [were] represented adequately.'"

Clement v. American Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation

omitted) (quoting In re Warner Commc'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).


### 2. Procedural Fairness

At the hearing held before this Court on November 1, 2006, the parties made various

representations on the record regarding the negotiating process, and the Court finds these

representations to be sufficient to enable it to conclude that the proposed settlement was the

result of serious arms-length, non-collusive negotiations. These conclusions are bolstered by

knowledge gained from the Court's supervision of the initial discovery and negotiation process in

this case. Based on these factors, the Court concludes that the proposed Settlement Agreement is

procedurally fair.


### 3. Complexity, Expense and Likely Duration of the Litigation

Turning now to the Grinnell factors, while the expense and likely duration of this

litigation is difficult to assess, the Court notes that all defendants deny any liability. Defendant

Statewide and its co-defendants raise four affirmative defenses in their answer: 1) that plaintiffs

14

fail to state a cause of action upon which relief can be granted; 2) that plaintiffs' claims may be time-barred by the applicable statute of limitations; 3) that the action does not satisfy the procedural prerequisites of Fed. R. Civ. P. 23(a); and 4) that plaintiffs cannot demonstrate that a class action is maintainable.

Even assuming that plaintiffs were successful in defeating any pretrial motions filed by defendants, and were able to establish defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay. Thus, this factor favors settlement.

4. Reaction of Class to Settlement

This is an issue that can be addressed only after notice of the proposed settlement has been sent to the class and the time for objections has passed.

5. Stage of Proceedings and Amount of Discovery Completed

At this point, the parties have conducted adequate discovery to permit them to assess the fairness and reasonableness of the proposed settlement in light of the relevant provisions of the FDCPA.

6. Risks of Class Prevailing: Establishing Liability and Damages and Maintaining the Class Action Through Trial

The risk of establishing liability also favors settling this dispute. Defendants have presented several affirmative defenses through which they may avoid liability. Furthermore, plaintiff's likelihood of success should be evaluated in light of the legal uncertainty created by the existing decisions under the FDCPA examining this theory of recovery.

Moreover, even if plaintiffs were able to establish liability in this action, "[t]he decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court." Savino v. Computer Credit, Inc., 164 F.3d at 86. Thus, the Act does not automatically require imposition of the maximum statutory amount even where the plaintiff successfully establishes liability. In determining the amount of statutory damages to impose on a defendant found liable under the statute, courts are required to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1692k(b)(2). Thus, even if successful, the plaintiff class may not be entitled to the maximum statutory penalty of $7,500.00 under the FDCPA.[8] See Savino v. Computer Credit, Inc., 164 F.3d at 86 (recounting criteria and affirming award of only $500 in statutory damages, an amount equal to half of that permitted by statute); Fasten v. Zager, 49 F. Supp. 2d 144, 150-51 (E.D.N.Y. 1999) (awarding no statutory damages where defendant's noncompliance was minor). In this manner, the risk of establishing liability and damages supports settlement.

---

[8]In this case, based on a calculation of one percent of defendants' net worth, the parties have agreed that the maximum statutory damages available to the class would be $7,500.00. However, the Court notes a small discrepancy in the parties' representations to the Court concerning the maximum statutory damages available to the class. While the parties represented to the Court at the November 1, 2006 hearing that they had agreed to the maximum class recovery allowed under the FDCPA, as computed from the defendants' net worth of approximately $750,000, the papers submitted to the Court indicate that the $7,500 award achieved through settlement is actually larger than the maximum statutory damages award. (See Mem. at 2). While this discrepancy does not impact the Court's assessment of the Grinnell factors, the Court will examine the issue in its discussion of the proposed Notice. See infra at 21.

### 7. Ability of Defendants to Withstand Greater Judgment

While it is likely that defendants could withstand a greater judgment than the total amount for which the case is settling, this is not a significant factor in this case because, under 15 U.S.C. §§ 1692k(a)(1) and (a)(2)(B), recovery is limited to actual damages, plus statutory damages in an amount not to exceed $1,000.00 for each named plaintiff, and to the lesser of $500,000.00 or one percent of defendants' net worth for the remainder of the class. Here, since actual damages have not been alleged and, according to the parties, the proposed settlement amount is equal to the maximum statutory damages available under the FDCPA,[9] the defendants' ability to withstand a greater judgment is not pertinent to the settlement consideration.

### 8. Range of Reasonableness of the Settlement Fund

Even absent the risk of establishing liability, the value of the settlement fund justifies settling this case. Under the settlement, those class members who do not opt out of the class will each receive $5.98,[10] which is, although a seemingly small amount, nonetheless reasonable for the plaintiff class to accept given the risk of establishing liability and the statutory limit on damages available in this litigation absent an assertion of actual damages. Similarly, the amounts to be awarded to plaintiff class representatives and to class counsel for its fees are also

---

[9]In light of the discrepancy noted above, the Court will proceed under the assumption that the settlement amount is equal to the maximum available in statutory damages, as this presumes that which is less favorable to the parties, and therefore promotes a more rigorous analysis of the proposed settlement.

[10]This calculation assumes that no one opts out of the class.

reasonable.[11]

On the basis of the foregoing discussion of the <u>Grinnell</u> factors, this Court finds the terms of the proposed settlement to be fair and reasonable under all of the circumstances present in this case.

## D. Adequacy of Notice

Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e). Under Rule 23(d)(2), the Court is given broad discretionary power to order proper notice to a class. See Fed. R. Civ. P. 23(d)(2). In a Rule 23(b)(3) class action such as this, "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" must be provided to the class. Fed. R. Civ. P. 23(c)(2)(B).[12] In <u>Eisen v. Carlisle & Jacquelin</u>, the Supreme Court held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for class members who are identifiable through reasonable effort. 417 U.S. at 173-74, 176 (holding that "individual notice to identifiable class members is not a discretionary consideration" but rather an "unambiguous

---

[11]The named plaintiffs are each to receive $1,000.00 for initiating the action on behalf of the class, plus counsel fees in an amount not to exceed $16,000.00. Additionally, the named plaintiffs' debts, which were the subject of their debt collection letters and which the plaintiffs dispute, are being waived.

[12]The Rule further provides that, for any class certified under Rule 23(a)(b)(3), the notice must "concisely and clearly state . . . the nature of the action, the definition of the class certified, the class claims, issues, or defenses, that a class member may enter an appearance through counsel if the member so desires, that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3)." Id.

requirement of Rule 23"); <u>Becher v. Long Island Lighting Co.</u>, 64 F. Supp. 2d at 177.

In this case, defendants will identify the class members, and will notify each identified class member through a written notice approved by the Court. The notice will be mailed to each class member by first class mail,[13] with defendants bearing the costs of notice. The Court finds this means of notification to be sufficient.

As to content, the notification form provides a description of the class,[14] a summary of the litigation, and a recitation of the amount to be paid to participating class members. The Notice identifies the plaintiffs as representatives of the Class and identifies class counsel.[15] In describing the proposed settlement, the Notice states:[16]

> 1. Each member of the Class <u>who does not exclude himself or herself from the settlement</u> shall receive an equal share of the $7,500 fund, an amount no less than $5.98.
>
> 2. Defendants shall pay to each of the named plaintiffs the amount of $1,000.00, and have arranged to have the named plaintiffs' disputed debt discharged.
>
> 3. Defendants shall bear class administration

---

[13]The parties plan to use a third party, First Class, Inc., to facilitate the mailing of the notices.

[14]The Court notes that the description of the class included in the proposed Notice references the letters attached to plaintiffs' Complaint as Exhibits A and C, but does not attach copies of those letters to the Notice itself. The Court finds that the exhibits must be attached to the Notice, although any personal identifying information may be redacted, in order to render the class description adequate.

[15]The Notice must be modified to further indicate that a class participant, if he or she so desires, may enter an appearance through his/her own counsel.

[16]To the extent that the Court has altered language in the proposed Notice, the parties are Ordered to modify the language contained in the final Notice accordingly.

expenses.

4. Subject to the approval of the Court, the defendants shall pay to the Class Counsel the cost of this action, together with reasonable attorneys' fees in an amount not to exceed $16,000.00.

5. All individuals who wish to opt out of the class may do so by submitting written notice stating that they do not wish to be part of the class.

6. Class members who opt out have the right to bring their own individual actions.

7. Any funds for checks not cashed within 90 days of the date of issuance will be distributed to the Neighborhood Economic Development Advocacy Project.

8. Class participants are bound by all Court decisions in the action.

9. If the proposed settlement is approved, all claims by class participants against defendants that are similar to those raised by plaintiffs will be released.

10. Plaintiffs will dismiss the lawsuit with prejudice 30 days after the settlement funds have been distributed.

In describing their options, the proposed Notice now informs class members that in order to opt out of the settlement, class members must submit a written request for exclusion to class counsel and to defendants' counsel no later than February 9, 2007.[17] In an effort to avoid any unduly burdensome opt-out requirements, the Court finds that opt-out notification sent to defendants' counsel alone is sufficient, and hereby modifies the proposed Notice to reflect this

---

[17]This date reflects three weeks for the parties to submit the required information to First Class, Inc., two weeks for First Class, Inc. to prepare and mail the notice, and forty-five days for the class members to respond to the notice.

change. The Notice further indicates that any objections must be filed with this Court by February 16, 2007, with copies to class counsel and defendants' counsel, and advises class members that a Fairness Hearing is scheduled before this Court on March 6, 2007 at 10:00 a.m. Finally, the Court finds that the parties must modify, if necessary, their discussion in the Notice concerning the defendants' net worth such that it is in accordance with the representations made on the record at the November 1, 2006 hearing.

With these minor modifications, the Court finds that the form of Notice and the method of sending the Notice are appropriate and, under the circumstances, provides the best form of notice to prospective class members.

## CONCLUSION

For the foregoing reasons, the parties' motion for class certification and for preliminary approval of the class settlement is granted. The Class has been certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3), and the Court hereby appoints plaintiffs, Olga Ayzelman and Anderson Bastien, as Class Representatives, and their attorney, Brian L. Bromberg, Esq. as counsel for the Class. The parties are directed to send the forms of notice in accordance with the discussion above within five weeks and 45 days of the date of this Order. The Fairness Hearing will be held before this Court on March 6, 2007 at 10:00 a.m.

The Clerk is directed to furnish a filed copy of the within to all parties.

**SO ORDERED.**

Dated: Brooklyn, New York
November 21, 2006

Cheryl L. Pollak
United States Magistrate Judge