UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
OLGA AYZELMAN, et al.,

                Plaintiffs,

- against -

STATEWIDE CREDIT SERVICES
CORP., et al.,

                Defendants.
----------------------------------------------X

**MEMORANDUM
and     ORDER**

04 CV 3732 (CLP)

On August 27, 2004, plaintiffs Olga Ayzelman and Anderson Bastien filed this class action, on behalf of themselves and all others similarly situated, against defendants Statewide Credit Services Corporation ("Statewide") and Michelle Schwartz and Gary Schwartz, individually and d/b/a Schwartz, Schwartz & Associates[1] (collectively, the "Schwartz defendants"), pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). On November 21, 2006, the Court granted the parties' joint motion for class certification and for preliminary approval of the class settlement agreement. Presently before the Court is the parties' request, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for final approval of the settlement agreement.

## FACTUAL BACKGROUND

Plaintiffs Ayzelman and Bastien filed the Complaint in this action on August 27, 2004,

---

[1] According to plaintiffs' November 20, 2006 letter, "Schwartz, Schwartz & Associates is a registered d/b/a of Statewide Credit Services Corp." (Pls.' Letter dated Nov. 20, 2006 at 1). Thus, "[b]ecause there are really only three defendants, Statewide Credit Services Corp., and Michelle and Gary Schwartz, the settlement [discussed herein] covers only those three defendants." (Id. at 2).

alleging that certain language in various debt collection letters purportedly sent to plaintiffs and to other individual consumers by the defendants violated the FDCPA. On August 29, 2006, the parties filed a joint motion for certification of a class for settlement purposes and for preliminary approval of a class action settlement agreement. After holding a hearing on the joint motion on November 1, 2006, the Court issued a Memorandum and Order dated November 21, 2006 ("Order) certifying the following class for settlement purposes: all consumers within the State of New York who were sent collection letters bearing defendant Statewide's letterhead[2] during the period of August 27, 2003 through August 27, 2004, in a form materially identical, or substantially similar, to the letters received by plaintiffs Ayzelman and Bastien, and which were not returned by the Postal Service as undelivered. (Order at 3-4, 9-13). According to defendants' records, it appeared at that time that there were 1,253 collection letters sent during the proposed class period that were materially identical, or substantially similar, to the letters received by plaintiffs. (Defs.' Letter dated June 27, 2005 at 1). The Court appointed plaintiffs Ayzelman and Bastien as Class Representatives, and appointed their attorney, Brian L. Bromberg, Esq. as Class Counsel. (Order at 11-12, 21).

After reviewing the procedural and substantive fairness of the proposed settlement of the class action, the Court granted the parties' motion for preliminary approval of the settlement. (Id. at 13-18). Among other things, and as discussed more fully in the Court's Order, the settlement agreement provided that each member of the Class who did not exclude himself or herself from

---

[2] While the Complaint details other allegedly unlawful collection letters issued by the defendants, the parties limited the class to those consumers who received collection letters bearing Statewide's letterhead, as "[t]hese were the collection letters sent with the most frequency by defendants and thus, will ensure that the greatest number of consumers have the opportunity to participate in the settlement." (Pls.' Letter dated Nov. 20, 2006 at 2).

2

the settlement would receive an equal share of the $7,500 settlement fund, that each of the named plaintiffs would receive $1,000, and that defendants would bear class administration expenses and the costs of the action, together with reasonable attorneys' fees in an amount not to exceed $16,000. (See id. at 19-20). The Court directed the parties to modify the forms of notice in accordance with the Court's directions (see id. at 19-21), and scheduled a Fairness Hearing for March 6, 2007. (Id. at 21). On December 8, 2006, after reviewing the parties' revisions, the Court granted final approval of the parties' settlement notice.[3] (Endorsed Letter Order dated Dec. 8, 2006).

## DISCUSSION

A. Standards

Rule 23(e) of the Federal Rules of Civil Procedure governs the settlement of class actions, and requires court approval before any settlement is executed. See Fed. R. Civ. P. 23(e). To grant its approval, the Court must determine that the proposed settlement is "fair, adequate, and reasonable." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (internal citations omitted). In doing so, the Court must consider both the procedural and substantive fairness of the settlement. D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (noting that the district court must "determine[ ] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms").

In determining the procedural fairness of the settlement, the court must determine if the settlement was "achieved through arms-length negotiations by counsel with the experience and

---

[3]After the Court granted final approval of the notice, the parties submitted a request to make a small amendment to the notice, which the Court granted on December 22, 2006.

ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999); see also D'Amato v. Deutsche Bank, 236 F.3d at 85. The court "'has the fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. American Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citations omitted).

The Second Circuit has enumerated nine factors to guide courts in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted); see also D'Amato v. Deutsche Bank, 236 F.3d at 86; Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 178.

B. Application

1. Procedural Fairness

As discussed in the Court's preliminary approval of the settlement, the parties made various representations regarding the negotiation process at the hearing held before this Court on November 1, 2006, and the Court finds these on-the-record representations to be sufficient to enable it to conclude that the settlement was the result of serious arms-length, non-collusive

negotiations. These conclusions are bolstered by knowledge gained from the Court's supervision of the initial discovery and negotiation process in this case. Based on these factors, the Court concludes that the settlement is procedurally fair.

2. Complexity, Expense, and Likely Duration of the Litigation

In evaluating the substantive fairness of the settlement using the Grinnell factors, the Court notes that while the expense and likely duration of this litigation are both difficult to assess, all defendants deny any liability. Defendant Statewide and its co-defendants raise four affirmative defenses in their Answer: 1) that plaintiffs fail to state a cause of action upon which relief can be granted; 2) that plaintiffs' claims may be time-barred by the applicable statute of limitations; 3) that the action does not satisfy the procedural prerequisites of Fed. R. Civ. P. 23(a); and 4) that plaintiffs cannot demonstrate that a class action is maintainable.

Even assuming that plaintiffs were successful in defeating any pretrial motions filed by defendants, and were able to establish defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay. Thus, this factor weighs in favor of approving the settlement even in the absence of a definitive assessment of the expense and likely duration of the litigation.

3. Reaction of Class to Settlement

Class action settlement notices were mailed to 624 class members.[4] Of the 498

---

[4] The Court notes that the parties had initially estimated that the class would consist of 1,253 individuals. However, as indicated by Class Counsel at the Fairness Hearing on March 6, 2007, the parties' initial estimate was reduced after duplicate entries were removed from defendants' records. The reduced class size nonetheless satisfies the numerosity requirement

5

settlement notices that were successfully mailed to class members,[5] only one class member – Anthony Portalin – requested exclusion from the settlement. (Pls.' Letter dated Mar. 2, 2007 at 1, Ex. A). Moreover, none of the class members attended the Fairness Hearing held before this Court on March 6, 2007. Thus, it appears that the reaction of the class to the settlement was positive, which favors approval of the settlement.

### 4. Stage of Proceedings and Amount of Discovery Completed

As noted in the Court's Order, the parties have conducted adequate discovery to permit them to assess the fairness and reasonableness of the proposed settlement in light of the relevant provisions of the FDCPA.

### 5. Risks of Class Prevailing: Establishing Liability and Damages and Maintaining the Class Action Through Trial

The risk of establishing liability also weighs in favor of approving the settlement. As previously indicated, the defendants have presented several affirmative defenses through which they may avoid liability. Moreover, plaintiffs' likelihood of success should be evaluated in light of the legal uncertainty created by the existing decisions under the FDCPA examining this theory of recovery.

The Court further notes that even if plaintiffs successfully established liability, the

---

contained in Rule 23(a) of the Federal Rules of Civil Procedure.

[5] Of the 624 settlement notices originally mailed, 126 notices were returned as "undeliverable" to First Class, Inc., a third-party mailing service, with no forwarding information. One notice was returned to First Class, Inc. with a new address and was subsequently re-mailed. (Pls.' Letter dated Mar. 2 2007 at 1, Ex. A).

FDCPA does not require imposition of the maximum amount of statutory damages, as "[t]he decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court." Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998). In determining the amount of statutory damages to impose on a debt collector found liable under the statute in a class action, courts are required to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1692k(b)(2). Thus, even if successful, the plaintiff class may not be entitled to the maximum statutory penalty of $7,500 available under the FDCPA.[6] In this manner, the risk of establishing liability and damages supports settlement.

### 6. Ability of Defendants to Withstand Greater Judgment

As indicated in the Court's preliminary approval of the settlement, it is likely that defendants could withstand a greater judgment than the total amount for which the case is settling. Nonetheless, this is not a significant factor in this instance because, under 15 U.S.C. §§ 1692k(a)(1) and (a)(2)(B), recovery is limited to actual damages, plus statutory damages in an amount not to exceed $1,000 for each named plaintiff, and statutory damages in an amount not to exceed the lesser of $500,000 or one percent of defendants' net worth for the remainder of the class. 15 U.S.C. §§ 1692k(a)(1), (a)(2)(B). Here, since actual damages have not been alleged

---

[6]In this case, based on a calculation of one percent of defendants' net worth, the parties have agreed that the maximum statutory damages available to the class would be $7,500, as defendants represented that their combined net worth is approximately $750,000.

and, according to the parties, the proposed settlement amount is equal to the maximum statutory damages available under the FDCPA, the defendants' ability to withstand a greater judgment is not pertinent to the settlement consideration.

7. Range of Reasonableness of the Settlement Fund

Even absent the risk of establishing liability, the value of the settlement fund justifies settling this case. Under the settlement, those class members who did not opt out of the class will each receive $15.09,[7] which is, although a seemingly small amount, nonetheless reasonable for the plaintiff class to accept given the risk of establishing liability and the statutory limit on damages available in this litigation absent an assertion of actual damages. Similarly, the amounts to be awarded to plaintiff class representatives[8] and to class counsel for its fees are also reasonable.[9]

---

[7]Although the parties initially stated that each class member who did not opt out of the settlement would receive $5.98, that initial calculation was performed using the larger estimate of the class size and assumed that no one would opt out of the settlement. The parties' current submissions indicate that each class member will receive $15.06. (Pls.' Letter dated Mar. 2, 2007 at 1). It appears, however, that the parties made an error in their calculations. First Class, Inc. mailed 624 settlement notices; 126 notices were returned without forwarding information, and one notice was returned with a new address and was re-mailed. Thus, 498 class members are presumed to have received the settlement notices. After subtracting the individual who opted out of the settlement, there are 497 class members who, according to the terms of the settlement, each take an equal share of the $7,500 settlement fund. According to the Court's calculations, this means that each class member who did not opt out of the settlement is entitled to receive $15.09.

[8]The Court notes that in addition to the $1,000 that each named plaintiff is to receive under the settlement, the named plaintiffs' debts, which were the subject of their debt collection letters and which the plaintiffs dispute, are also being waived.

[9]The preliminary settlement provided that defendants were to pay to the Class Counsel the costs of the action, together with reasonable attorneys' fees in an amount not to exceed $16,000. (See Order at 20). Since the fee certifications submitted by Class Counsel indicate that counsel

8

On the basis of the foregoing discussion of the Grinnell factors, this Court finds the terms of the settlement to be fair and reasonable under all of the circumstances present in this case.

C. Adequacy of Notice

Pursuant to the Federal Rules of Civil Procedure, the "court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e). Under Rule 23(d)(2), the Court is given broad discretionary power to order proper notice to a class. See Fed. R. Civ. P. 23(d)(2). In a Rule 23(b)(3) class action such as this, "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" must be provided to the class. Fed. R. Civ. P. 23(c)(2)(B). The Supreme Court has held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for class members who are identifiable through reasonable effort. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-74, 176 (1974) (holding that "individual notice to identifiable class members is not a discretionary consideration" but rather an "unambiguous requirement of Rule 23"); see also Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 177.

In preliminarily approving the settlement, the Court directed the parties to modify the proposed notice, but otherwise held that the parties' proposed method of notifying the class was adequate. (See Order at 18-21). The Court approved the modified notice on December 8, 2006 (see Endorsed Letter Order dated Dec. 8, 2006), and the notices were mailed by First Class, Inc.

---

billed fees in excess of that amount (see Pls.' Letter dated Mar. 5, 2007, Exs. A, B), and because the Court's independent review of the billing records indicate that the time billed on the matter was reasonable, the Court finds that an award of $16,000 to Class Counsel is reasonable.

9

in accordance with the parties' initial representations. Therefore, the Court finds that the form of notice was adequate.

## CONCLUSION

For the foregoing reasons, the parties' request for final approval of the class action settlement is granted. The parties are hereby Ordered to distribute the settlement funds in accordance with the terms of the settlement.

The Clerk is directed to send copies of this Memorandum and Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 23, 2007

/s/ Cheryl Pollak
Cheryl L. Pollak
United States Magistrate Judge